IN THE UNITED STATES DISTRICT COURT
FORTHE NORTHERN DISTRICT OF WEST VIRGINIA
Clarksburg

**AMANZE ANTOINE,**

    Petitioner,

v.                                 **Crim. Action No.   1:18-CR-17-1**
                                       **Civil Action No.   1:22-CV-145**

**USA,**

    Respondent.

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

On November 18, 2022, Amanze Antoine ("petitioner"), through counsel, filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Civil Action Number 1:22-CV-145 Doc. 1; Criminal Action Number 1:18-CR-17-1 Doc. 382].[1]  On February 3, 2023, the Government filed a Response in opposition to the Motion. [Doc. 387]. On February 23, 2023, petitioner filed a Reply. [Doc. 392]. The matter is currently pending before the undersigned for a Report and Recommendation pursuant to LR PL P 2. For the reasons stated below, the undersigned recommends that the District Judge deny and dismiss petitioner's motion.

### II.    PROCEDURAL HISTORY

**A. Conviction and Sentence**

On March 6, 2018, the United States Attorney filed the initial Indictment in Antoine's case. On June 19, 2018, a Superseding Indictment was filed, charging

---

[1] From this point forward, all document numbers refer to petitioner's criminal action.

1

petitioner with: Count One, conspiracy to violate Federal firearm laws in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2); Count Two, conspiracy to distribute cocaine base in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C); Count Three: illegal transportation in state of residency of a firearm acquired outside state of residency in violation of 18 U.S.C. §§ 922(a)(3) and 924(a)(1)(D); and Count Four, unlawful possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  Following a jury trial, Antoine was found guilty of Counts One, Two, and Four, and not guilty of Count Three.  On March 27, 2019, petitioner appeared before Judge Keeley and was sentenced to a total term of 120 months imprisonment, to be followed by three years of supervised release.

**B. Appeal**

On August 30, 2021, petitioner filed a notice of appeal.  Petitioner raised two issues on appeal.  First, that in light of **Rehaif v. United States**, 139 S.Ct. 2191 (2019) his conviction under § 922(g) should be vacated.  **Rehaif** clarified that in a prosecution under § 922(g) and § 924(a)(2), the Government must prove *both* that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm.  Antoine argued that his conviction should be vacated because the Government did not present evidence that he knew he was a convicted felon and that the district court had instructed the jury that it was not necessary for the Government to prove such.  However, because these arguments were not raised in this Court, the Fourth Circuit reviewed these claims for plain error and found that he could not establish that the error affected his substantial rights because he had not shown that he would have presented evidence that he did not know he was a felon.  Second, Antoine argued that the district court erred in voir dire questioning of a prospective juror; the Fourth

2

Circuit concluded that "based on the totality of the record [] Antoine cannot show that the juror was biased or that her service as a juror in his case affected his substantial rights." [Doc. 363 at 4].

## C. Federal Habeas Corpus

On November 18, 2022, petitioner filed the instant petition.[2] In his petition, Antoine challenges his convictions of Count One, conspiracy to violate Federal firearm laws in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2); and Count Four, unlawful possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), arguing that they are unconstitutional following the Supreme Court's ***New York State Rifle & Pistol Association, Inc. v. Bruen***, 142 S.Ct. 2111 (2022).  First, he argues that 18 U.S.C. §§ 922(a)(6), 922(g)(1), and 924(a)(2) are facially unconstitutional because they are not consistent with the Nation's historical tradition of firearm regulation.  Second, he argues that even if the statutes are not facially unconstitutional, they are unconstitutional as applied to Antoine because the conduct underlying his predicate felony is constitutionally protected.

In response, the Government argues, first, that § 922(g)(1) is presumptively lawful under Supreme Court and Fourth Circuit precedent and, second, that there is a "longstanding tradition" of prohibiting firearm possession by persons deemed dangerous by the Government.

---

[2] Throughout this Report and Recommendation, the undersigned relies on [Doc. 382], filed on November 22, 2023; it appears the petition was re-filed due to an initial error with how the petition was filed in the Court's E-Filing system.  Regardless, the timeliness of the motion is not in dispute.

### III. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, a prisoner may file a motion challenging the sentence imposed by a federal court, "if (1) the sentence violates the Constitution or laws of the United States; (2) the sentencing court lacked jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum; or (4) the sentence 'is otherwise subject to collateral attack.'" **Beyle v. United States**, 269 F. Supp. 3d 716, 725 (E.D. Va. 2017) (quoting 28 U.S.C. § 2255(a)). "A sentence is 'otherwise subject to collateral attack,' if a petitioner shows that the proceedings suffered from 'a fundamental defect which inherently results in a complete miscarriage of justice.'" **Id**. (quoting **United States v. Addonizio**, 442 U.S. 178, 185 (1979)). "A petitioner bears the burden of proving one of those grounds by a preponderance of the evidence." **Id**. (citing **Miller v. United States**, 261 F.2d 546, 547 (4th Cir. 1958)). "If he satisfies that burden, the court may vacate, set aside, or correct the sentence." **Id**. (citing 28 U.S.C. § 2255(b)). "However, if the motion, when viewed against the record, shows that the petitioner is entitled to no relief, the court may summarily deny the motion." **Id**. (citing **Raines v. United States**, 423 F.2d 526, 529 (4th Cir. 1970)).

### IV. ANALYSIS

Prior to **New York State Rifle & Pistol Ass'n, Inc. v. Bruen**, 142 S. Ct. 2111, 2126 (2022), courts had applied a two-part test following the Supreme Court's decision in **District of Columbia v. Heller**, 554 U.S. 570 (2008). "Under that test, courts conducted a historical inquiry into whether a law regulated conduct within the scope of the Second Amendment, then conducted an intermediate scrutiny analysis to evaluate the fit between the law and the governmental objective." **United States v. Nutter**, 624 F. Supp. 3d 636,

4

639–40 (S.D. W.Va. 2022) (citing **United States v. Chester**, 628 F.3d 673, 680–83 (4th Cir. 2010)).  In **Bruen**, the Court found that the two-step approach "is one step too many":

> Today, we decline to adopt that two-part approach. In keeping with **Heller**, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command." **Konigsberg v. State Bar of Cal.**, 366 U.S. 36, 50, n. 10, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961).

**Bruen**, 142 S. Ct. at 2126 (2022) (footnote omitted).

Since the **Bruen** opinion, courts in this district and elsewhere have seen a number of challenges to § 922(g)(1), with this Court and others upholding the constitutionality of § 922(g)(1) and similar sections.  See **United States v. Doty**, No. 5:21-CR-21, 2022 WL 17492260 (N.D. W.Va. Sept. 9, 2022) (Bailey, J.) (denying motion to dismiss and motion to withdraw guilty plea where defendant argued that **Bruen** invalidated § 922(g)(1)); **United States v. Medrano**, No. 3:21-CR-39, 2023 WL 122650 (N.D. W.Va. Jan. 6, 2023) (Groh, J.) (same); **United States v. Coleman**, No. 3:22-CR-8-2, 2023 WL 122401, at *1 (N.D. W.Va. Jan. 6, 2023) (Groh, J.) (same); **United States v. Nutter**, 624 F. Supp. 3d 636 (S.D. W.Va. 2022) (Berger, J.) (rejecting a challenge to § 922(g)(9)); **United States v. Gould**, No. 2:22-CR-00095, 2023 WL 3295597 (S.D.W. Va. May 5, 2023) (Johnston, J.) (rejecting a challenge to § 922(g)(4)); **United States v. Hughes**, No. 2:22-CR-00640-DCN-1, 2023 WL 4205226 (D.S.C. June 27, 2023) (Norton, J.) (collecting cases).

Indeed, the holding in **Bruen** does not disturb the constitutionality of the prohibition on felons possessing firearms because the Court's decision is based upon a recognition

5

of the rights of "law abiding" citizens. "The Second Amendment to the United States Constitution does not protect a convicted felon's 'right' to bear arms . . .. *Bruen*, which regards the right of 'law-abiding citizens with ordinary self-defense needs' to keep and bear arms, does not change this conclusion." *Larch v. United States*, No. 1:18-CR-00146-MRWCM-1, 2023 WL 3081292, at *3 (W.D.N.C. Apr. 24, 2023) (Reidinger, C.J.) (appeal pending) (citing *United States v. Mahin*, 668 F.3d 119, 123 (4th Cir. 2012) and *Bruen*, 142 S.Ct. at 2156).

The undersigned finds Judge Groh's opinions in *United States v. Medrano*, Criminal Action Number 3:21-CR-39, 2023 WL 122650 (N.D. W.Va. Jan. 6, 2023), and *United States v. Coleman*, No. 3:22-CR-8-2, 2023 WL 122401, at *1 (N.D. W.Va. Jan. 6, 2023), particularly instructive. In *Medrano*, defendant entered a plea of guilty to unlawful possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Medrano then sought to withdraw his plea and dismiss the indictment based on the holding in *Bruen*, arguing that § 922(g)(1) violated his Second Amendment right to keep and bear arms and that felon-disarmament laws were not based in any historical tradition. *See Medrano*, Criminal Action Number 3:21-CR-39, [Docs. 43 & 44]. Judge Groh observed that the *Bruen* opinion repeatedly makes clear that the Supreme Court's rationale rests firmly upon recognizing the rights of "ordinary, law-abiding citizens" and set forth a "non-exhaustive list of the *Bruen* Court's inclusion of 'law-abiding' language that narrows the scope of its decision:"

> • "petitioners ... are law-abiding, adult citizens...." [*Bruen*, 142 S.Ct.] at 2124–25;
>
> • "The Second Amendment 'is the very product of an interest balancing by the people' and it 'surely elevates above all other interests the right of law-

    abiding, responsible citizens to use arms' for self-defense." *Id*. at 2131 (quoting *Heller*, 554 U.S. at 635);

    • "While we do not now provide an exhaustive survey of the features that render regulations relevantly similar under the Second Amendment, we do think that *Heller* and *McDonald* point toward at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id*. at 2132–33;

    • "It is undisputed that petitioners Koch and Nash—two ordinary, law-abiding, adult citizens—are part of 'the people' whom the Second Amendment protects." *Id*. at 2134;

    • "Nor is there any such historical tradition limiting public carry only to those law-abiding citizens who demonstrate a special need for self-defense." *Id*. at 2138;

    • "None of these historical limitations on the right to bear arms approach New York's proper-cause requirement because none operated to prevent law-abiding citizens with ordinary self-defense needs from carrying arms in public for that purpose." *Id*. at 2150.

    • "Nor, subject to a few late-in-time outliers, have American governments required law-abiding, responsible citizens to demonstrate a special need for self-protection distinguishable from that of the general community in order to carry arms in public." *Id*. at 2156 (internal quotation and citation omitted);

    • "New York's proper-cause requirement violates the Fourteenth Amendment in that it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *Id*. at 2156.

*Medrano*, 2023 WL 122650, at *1–2. "In sum, Mr. Medrano's Motion to Dismiss the Indictment fails because he is not afforded the same Second Amendment protections enjoyed by 'the people' who are 'law-abiding' citizens. Mr. Medrano's status as a felon places him beyond *Bruen*'s reach." *Id*. at *3.

    In responding to the argument that *Bruen* did not disturb the lawfulness of prohibitions on felons possessing firearms, petitioner relies heavily on now-Justice Barrett's dissent in *Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019) (Barrett, J.), *abrogated*

7

*by Bruen*, 142 S. Ct. 2111 (2022).  However, the dissent in *Kanter* supports the idea that the Government can restrict the Second Amendment rights of people it deems dangerous. "Neither felons nor the mentally ill are categorically excluded from our national community. That does not mean that the government cannot prevent them from possessing guns." *Kanter*, 919 F.3d at 453 (7th Cir. 2019).  Similarly, "Founding-era legislatures did not strip felons of the right to bear arms simply because of their status as felons. . . . [L]egislatures disqualified categories of people from the right to bear arms only when they judged that doing so was necessary to protect the public safety." *Id*.  As Judge Berger in the Southern District summarized, "[t]hus, although then-Judge Barrett disagreed with the panel majority conclusion that even nonviolent felons may categorically 'lose their Second Amendment rights solely because of their status as felons,' she reasoned that history 'does support the proposition that the state can take the right to bear arms away from a category of people that it deems dangerous.'" *United States v. Nutter*, 624 F. Supp. 3d 636, 643 (S.D. W.Va. 2022) (quoting *Kanter*, 919 F.3d at 464).

The undersigned sees no reason to stray from other rulings by this Court by other judges, and by other district courts in this Circuit.  The undersigned finds that 18 U.S.C. §§ 922(g)(1) and 924(a)(2) are constitutional.

For similar reasons, the undersigned finds that 18 U.S.C. § 922(a)(6) is constitutional.  Under 18 U.S.C. § 922(a)(6), it shall be unlawful-

> for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the

8

> lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter.

18 U.S.C. § 922(a)(6).  The instant petition offers little discussion of § 922(a)(6), and it appears that petitioner's argument against its constitutionality is the same as his argument against § 922(g)(1): that it is aimed at keeping firearms out of the hands of felon and does not comport with the nation's tradition of firearm regulation.  The undersigned finds this argument unpersuasive for the reasons set forth above.  Further, the undersigned notes that nothing in **Bruen** indicates that punishing false statements runs afoul of this nation's tradition of firearm regulation.  Although the undersigned is not aware of a case in the Fourth Circuit addressing a challenge under **Bruen** to § 922(a)(6), the undersigned finds the Seventh Circuit's reasoning persuasive:

> Congress is entitled to require would-be purchasers to provide information—their names, addresses, Social Security numbers, criminal histories, and so on. We may assume that the Second Amendment would prevent enforcement of a statute saying, for example, that "anyone whose surname starts with the letter H is forbidden to possess a firearm." But that would not prevent Congress from demanding purchasers' real names. So too with Social Security numbers: the Constitution may block the federal government from limiting gun ownership to people who have Social Security numbers, but it would not interfere with the use of such numbers to identify, and perhaps check the criminal history of, people who do have them. The power to collect accurate information is of a different character—and stands on a firmer footing—than the power to prohibit particular people from owning guns.

**United States v. Holden**, No. 22-3160, 2023 WL 4039607, at *1 (7th Cir. June 16, 2023).

However, petitioner argues that even if this Court finds that the statutes are facially constitutional, they are unconstitutional as-applied to petitioner.  [Doc. 382 at 34]. Petitioner argues that the statutes are unconstitutional as-applied because the underlying conduct forming the basis of the predicate felony for Count Four is constitutionally protected.  Petitioner argues that his earlier conviction under New York Penal Code

9

§ 265.03: criminal possession of a weapon, was for conduct protected under the Second Amendment. [Doc. 382 at 36]. Even assuming, *arguendo*, that the New York statute is unconstitutional under **Bruen**, petitioner's conviction under § 922(g)(1) would remain valid. **Lewis v. United States**, 445 U.S. 55 (1980); **United States v. Kahoe**, 134 F.3d 1230, 1235 (4th Cir. 1998).

In **Lewis**, the Supreme Court found that a federal firearms statute prohibiting a felon from possessing a firearm was valid even where the underlying state-court felony was subject to collateral attack. **Lewis v. United States**, 445 U.S. 55, 65 (1980).

In **Kahoe**, the petitioner had pleaded guilty to carrying a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1). While on release pending sentencing, he was found to be in possession of a firearm and was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), with the § 924(c)(1) offense being the predicate felony. Following the Supreme Court's ruling in **Bailey v. United States**, 516 U.S. 137 (1995), Kahoe successfully brought a § 2255 motion and his § 924(c)(1) conviction was set aside. Kahoe then moved for § 2255 relief from the § 922(g)(1) conviction on the basis that the underlying predicate felony had been set aside. Following the reasoning in **Lewis**, the Fourth Circuit affirmed denying relief on the basis that at the time of the § 922(g)(1) conviction, the § 924(c)(1) conviction had not been set aside.

## V.     RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person

in Federal Custody [**Civil Action Number 1:22-CV-145 Doc. 1; Criminal Action Number 1:18-CR-17-1 Doc. 382**] be **DENIED** and **DISMISSED with prejudice**.

Within fourteen days after service of this Report and Recommendation, the petitioner may file with the Clerk of this Court**, specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection**. A copy of such objections should also be submitted to the United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to transmit copies of this Order to any counsel of record herein. In addition, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

**DATED**: July 5, 2023.

/s/ *Michael John Aloi*
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE